PEOPLE *v*. COOK.

147  $\overline{127}$
f147  191
f147  $^4478$

1. CONVICTS—OFFENSES—PROSECUTION—PROCEDURE.

Act No. 118, Pub. Acts 1893, providing for the prosecution and punishment of convicts committing crimes in prison, contemplates the ordinary complaint, warrant, and information in such cases, except that the warrant is directed to the warden of the prison; and the fact that the warrant in such a case describes accused as an "inmate" instead of a "convict" is not prejudicial to him.

2. SAME—WARRANT—DEFECT—WAIVER BY WARDEN.

If the warden of the prison in which a convict accused of crime is confined sees fit to produce him before the examining magistrate, and before the circuit court for trial, on a warrant technically defective, that is no concern of the accused, and he is not prejudiced by the waiver on the part of the warden of technical defects in the warrant.

3. CONSTITUTIONAL LAW — DISTRIBUTION OF POWERS — POWER OF PEOPLE TO CHANGE DISTRIBUTION.

The people have an inherent right to so amend the Constitution as to take away from, or add to, the powers of either department of the government.

4. SAME—INDETERMINATE SENTENCE LAW—VALIDITY.

The indeterminate sentence law of 1905 (Act No. 184), vesting in the board of pardons and the warden the power to parole and recall prisoners before the expiration of the time for which they are sentenced to prison, the benefits of which the convict may avail himself of or not as he chooses, in no way interferes with executive or judicial constitutional authority.

5. SAME—DISTRIBUTION OF POWERS—REVIEW OF CONVICTION AND SENTENCE.

Neither the board of pardons nor any other officer or board has any constitutional right to question, examine into, or determine the justice of a sentence, or to question the propriety of a conviction, the people through their Constitution having placed that power exclusively in the courts.

6. SAME — INDETERMINATE SENTENCE LAW — CRUEL AND UNUSUAL PUNISHMENTS.

The indeterminate sentence law of 1905 (Act No. 184), provid-

ing for a sentence in all cases to imprisonment for not less than the minimum, nor more than the maximum, term prescribed by the statute punishing the crime, does not provide for any cruel or unusual punishment.

7. SAME—PERSONS ENTITLED TO RAISE CONSTITUTIONAL QUESTION. Whether the provision for cumulative sentences contained in the indeterminate sentence law of 1905 (Act No. 184) is valid is of no concern to one not sentenced under that provision, the defect pointed out not being one that would invalidate the entire statute.

Error to Ionia; Davis, J.   Submitted October 18, 1906. (Docket No. 170.)   Decided February 5, 1907.

Fred Cook was convicted of an assault with intent to murder, and sentenced to imprisonment for not less than twelve and one-half nor more than twenty years in the State house of correction and branch of the State prison at Marquette.   Affirmed.

The respondent was convicted and sentenced under the indeterminate sentence law, November 20, 1904, to the Michigan reformatory at Ionia, for larceny, for not less than six months nor more than five years.   While a convict he committed an assault upon another convict, and was charged with and convicted of an assault with intent to murder, November 29, 1905, and sentenced to the State prison at Marquette under the indeterminate sentence law.   Act No. 184, Pub. Acts 1905.

The principal error relied upon for the reversal of the conviction and the discharge of the prisoner is that the complaint, warrant, and information under which he was convicted are fatally defective.   Prior to the passage of Act No. 118, Pub. Acts 1893, a convict who committed a crime in a prison could not be taken from the prison where he was confined, brought before a justice of the peace for examination, and before the circuit court for trial until the expiration of the sentence which he was then serving.   The reason of this was not that a crime had not been committed, but that the law made no pro-

vision for taking the convict out of the control of the prison authorities and placing him upon trial for the second offense. The act above referred to provides for a trial for a crime committed in the prison. The provisions of the law are as follows:

"SEC. 64. That any convict now or hereafter confined in any prison, for any term other than life, and who during the term of such confinement shall commit any crime punishable under the laws of this State by imprisonment in such institution, shall be subject to the same punishment as if the crime had been committed at any other place, or by a person not so confined.

"SEC. 65. The circuit court of the county in which the prison is shall have jurisdiction over cases arising under the foregoing section, and the proceedings thereto pertaining shall in all ways conform to the law and rules in case of like offenses occurring elsewhere, except that the examination may be held in one of the offices of the penal institutions where the crime is committed, at the option of the justice of the peace before whom the complaint may be made, and that the warrant shall be made in the ordinary form, shall be directed to the warden of such prison, and shall set forth that the accused is imprisoned in such prison under and by authority of the laws of the State of Michigan; and further, that the convict so confined shall remain in the custody of such warden subject to the order of the circuit court of the county in which such prison is located."

The complaint before the justice of the peace was in the usual form, making no reference to the fact of his confinement in the house of correction. The warrant was directed, as the statute requires, to the warden of the house of correction. It recited that the respondent was then "an inmate of the house of correction at Ionia," and summoned the warden to produce the accused before the justice. The respondent waived examination and was committed to the house of correction to await trial. The information was in the usual form, charging an assault with intent to murder one Bert Fenton, and contained no reference to the fact that the respondent was a convict in

147 MICH.—9.

the prison.   Upon reading the information to the respondent, he stood mute, and a plea of not guilty was entered by order of the court.   At the conclusion of the evidence counsel for respondent requested the court to direct a verdict of not guilty and discharge the respondent, because neither the warrant nor the information alleged that the respondent was a convict imprisoned for a term other than life.

*William K. Clute*, for appellant.

*Frank M. Burbank* Prosecuting Attorney, for the people.

Grant, J. (*after stating the facts*).   1. The statute does not make any change in the form of complaints for criminal offenses; neither does it require any change in the form of the information.   It does require that the proceedings—

" Shall in all ways conform to the law and rules in case of like offenses occurring elsewhere, except that the examination may be held in one of the offices of the penal institutions,   *   *   *   and that the warrant shall be made in the *ordinary form*, shall be directed to the warden of such prison, and shall set forth that the accused is imprisoned in such prison under and by authority of the laws of the State of Michigan."

The warrant was served as the law directs.   The warden produced the respondent in obedience to such warrant, and all the forms of law were complied with from the beginning to the end of the proceedings.   The warrant uses the word "inmate," instead of "convict."   The failure to follow the precise language of the statute was not prejudicial to respondent.   It had no connection whatever with the commission of the crime for which he was charged.   The warden might, perhaps, have refused to produce the respondent in obedience to the writ, because of the technical noncompliance with the statute; but it cannot be invoked in behalf of the respondent to set aside

the conviction, and cause his discharge. Criminals ought not to be turned loose upon the community for such bare technical errors. The statute contemplates the ordinary complaint, the ordinary warrant, and the ordinary information. In addition, it requires the warrant to be directed to the warden who has the respondent in charge. If the warden sees fit to produce the prisoner before the examining, magistrate, and before the circuit court for trial, upon a warrant technically defective, that is no concern of the prisoner. His rights are not prejudiced by the waiver on the part of the warden of technical defects in the warrant.

2. Counsel for the respondent attack the constitutionality of Act No. 184, Pub. Acts 1905. The constitutionality of this act was argued by counsel and discussed in *Re Manaca*, 146 Mich. 697. While the constitutionality of this act was not directly involved in that case, in so far as it was determined in the opinion of my Brother MOORE; it is unnecessary to cover the ground again. We therefore adopt that opinion so far as applicable to this. The reasons asserted against its constitutionality are: (*a*) It encroaches upon the judicial power of the government which is lodged in the courts; (*b*) it provides for cumulative sentences not mentioned in its title; (*c*) it imposes unusual punishments. The provision for imposing an indeterminate sentence is substantially the same in this act as it was in Act No. 136, Pub. Acts 1903. This provision was sustained in *Re Campbell*, 139 Mich. 597.

After the decision in *People* v. *Cummings*, 88 Mich. 249 (14 L. R. A. 285), holding an act unconstitutional which was substantially the same as the present act, the legislature submitted an amendment (art. 4, § 47) to the Constitution which was adopted. That amendment is as follows:

" The legislature may, by law, provide for indeterminate sentences, so called, as a punishment for crime, on conviction thereof, and for the detention and release of persons imprisoned or detained on such sentences." Pub. Acts 1903, p. 452.

That indeterminate sentence act was published in full in the opinion in People v. Cummings, and the constitutional amendment was adopted with reference to the well-known provisions and policy of the indeterminate sentence laws which had been enacted in this and some other States. If that amendment to the Constitution took away any of the power which had theretofore been lodged in the judiciary or the executive, the people exercised a right inherent in them to adopt a constitutional amendment taking away from, or adding to, the powers of either of the departments of government. The design of the indeterminate sentence law is to reform criminals and to convert bad citizens into good citizens, and thus protect society. In order to accomplish this result, the theory is that, when the prisoner has shown by his conduct that he may turn from his criminal career, he should have an opportunity, under favorable circumstances, to make the test. He is in prison for a definite time. Any release therefrom is a favor to him. Such release does not necessarily involve a judicial or an executive act. The release of a prisoner under the old law before the expiration of his term of imprisonment for good behavior has never been held an interference with judicial or executive power.

The paroled prisoner is regarded as still under the control of the prison authorities. When the prisoner applies for his parole, he applies under the provisions of the law, agrees to its terms, and fully understands that for the misconduct provided in the statute he may be taken back to serve out his term of sentence. This power of recall is lodged in the warden, subject to review by the board of pardons. The prisoner applies for and obtains his release upon those terms, and no other. They are of the very essence of the indeterminate sentence law. Without the power to retake the prisoner there would be no incentive to good behavior through fear of being again imprisoned. This power of release and recall may be vested in any officer or board without any interference with judicial or

executive constitutional authority. If the prisoner chooses not to avail himself of these beneficial provisions of the law, he can remain in prison and serve out his full sentence.

I fully concur in the views of the learned attorney for the respondent that the board of pardons has no constitutional right to question, examine into, or determine the justice of a sentence, or to question the propriety of the conviction. The people through their Constitution have placed that power exclusively in the courts. No other officer under the Constitution is clothed with the power to review the judgments of the courts.

Under the constitutional amendment and the indeterminate sentence law enacted under it, however, the legislature may confer upon the governor, the warden, the prison boards, or the so-called board of pardons the power to determine whether the conduct of a prisoner is such that he may safely be released and allowed his temporary freedom, and to determine whether he has chosen to turn from his criminal ways and become a law-abiding citizen, or whether he has violated his contract of parole. The power to determine the conditions of a release and the violation of the release is no more judicial than was the power under the old law to determine under what conditions a prisoner might shorten his term of imprisonment. The law does not provide for any unusual punishment. The legislature may fix one definite punishment for any crime, or it may fix a minimum and a maximum. When a constitutional law has fixed the punishment for an offense, a sentence under that law is not cruel or unusual within the meaning of the Constitution. One judge might sentence a man convicted of larceny for one year, and another might sentence the same man for the same offense for five years. When the judge imposes a sentence within the law, his sentence is not a cruel or unusual punishment. It is laws providing for cruel and unusual punishments that the Constitution refers to and prohibits, and not sentences by courts under constitutional laws.

It is unnecessary to determine the question raised as to cumulative sentences. The entire act would not be held unconstitutional even should this provision be held void. The prisoner in this case is not concerned in that question. The legislature may lawfully provide that prisoners who have twice previously been convicted of a felony shall not be eligible to parole. The circuit judge in imposing sentence found:

"It appearing from examination of the respondent, under oath, that he is thirty years of age and has five times been convicted of the crime of larceny and burglary, and has twice before, while serving sentence, stabbed other convicts, and that the causes of said conduct are a lawless disposition and violent temper,

"Therefore it is ordered and adjudged by the court now here that the said Fred Cook be confined in the said State house of correction and branch of the State prison in the Upper Peninsula, Marquette, Michigan, at hard labor, for a period of not less than twelve years and six months, and not more than twenty years from and including this day."

The wisdom of the law which places criminals of such character beyond the power of harm cannot be questioned. Whether the act sufficiently provides for the determination of the question of previous convictions may be doubtful. But, if it were defective in this regard, the whole law could not be held void for that reason.

The decisions upon the indeterminate sentence law passed in other States are cited in *People* v. *Cummings,* and need not be cited or rediscussed here. They are the decisions in view of which the legislature submitted and the people adopted the above amendment.

The conviction is affirmed.

McALVAY, C. J., and CARPENTER, BLAIR, and MOORE, JJ., concurred.