KENT COUNTY PROSECUTOR v KENT COUNTY SHERIFF (ON REHEARING)

Docket No. 74055. Argued January 13, 1987 (Calendar No. 1). Decided July 1, 1987.

On May 12, 1983, the Kent County Sheriff declared an overcrowded state of emergency for the Kent County jail as authorized by the county jail overcrowding act, 1982 PA 325. The Kent County Prosecutor brought an action in the Kent Circuit Court against the sheriff, seeking a declaration that 1982 PA 325 was unconstitutional, a preliminary injunction to prevent the release of prisoners under the act for the duration of the lawsuit, and an injunction to preclude the sheriff from releasing prisoners prior to the expiration of their sentences. The court, George V. Boucher, J., denied the plaintiff's motion for a preliminary injunction, and upheld the constitutionality of the act. The Court of Appeals, R. B. BURNS, P.J., and D. E. HOLBROOK, JR., and TAHVONEN, JJ., reversed in an opinion per curiam, holding that the act was unconstitutional because it usurps the Governor's exclusive power of commutation of sentences (Docket No. 72805). The decision of the Court of Appeals was affirmed by equal division. 425 Mich 718 (1986). Rehearing was granted to resolve the Court's division.

In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY and Justices LEVIN, ARCHER, and GRIFFIN, the Supreme Court *held:*

The county jail overcrowding act does not infringe upon the Governor's power of executive clemency.

1. The county jail overcrowding act directs a county sheriff to declare a jail overcrowding state of emergency when the general prison population of a county jail exceeds one hundred percent of the rated design capacity of the jail. Following such a declaration, if the sheriff is unable to reduce the jail population sufficiently to eliminate overcrowding, the chief judge of

REFERENCES

Am Jur 2d, Governor § 4.

Am Jur 2d, Pardon and Parole §§ 5, 14-16, 38, 75, 78.

See the annotations in the Index to Annotations under Parole, Probation, and Pardon.

the circuit court must classify the prisoners according to whether or not their release would present a high risk to public safety. Thereafter, the sheriff must reduce the sentences of low-risk prisoners by a percentage set by the chief judge until the overcrowding is alleviated. The overcrowding of Michigan jails is a legitimate legislative concern. By enacting the jail over-crowding act, the Legislature has taken an appropriate measure to address the problem, while intruding upon the Governor's powers as little as possible. The incidental benefit that accrues to the prisoners released does not amount to an unconstitutional invasion of the powers of the executive.

2. A lawful purpose alone will not save a statute which clearly violates constitutional principles. It is not necessarily fatal to this act that, when considered in a vacuum, it appears to interfere with the Governor's executive powers. In determining whether an act disrupts the proper balance between the coördinate branches of government, the proper inquiry focuses on the extent to which it prevents one branch from accomplishing its constitutionally assigned functions. Under the state constitution, the Governor has the power to grant reprieves, commutations, and pardons with respect to individual prisoners. They are typically motivated by a prisoner's personal characteristics and behavior in jail or prison. By contrast, the sentence reductions under the jail overcrowding act are prompted by generalized conditions of a jail or jails within the county. Once an overcrowding emergency is declared, it is the extent of the emergency and not the characteristics of the prisoners that determines the number of prisoners who will have their sentences reduced. In addition, the goals of commutations and the jail overcrowding act differ. Commutations are directly aimed at benefiting the released prisoner, and no others. Reductions in sentences due to jail overcrowding are directly aimed at alleviating an emergency situation. Benefits to individual prisoners are simply an incidental and inevitable result of the final measures taken to alleviate the jail emergency.

3. The Legislature, in confronting jail overcrowding as it affects the common good, may incidentally reduce jail sentences, whether indeterminate or not. The act ensures enforcement of legislatively directed regulations and provides a method by which the county and its jail officials can alleviate overcrowding before incidents giving rise to potential liability occur. Additionally, it avoids challenges based on allegations of cruel and unusual punishment and seeks to prevent violations of prisoners' Eighth and Fourteenth Amendment rights.

Reversed.

Justice BOYLE, joined by Justices LEVIN and BRICKLEY, concurred in the result reached by the majority on the ground that the power granted the Legislature in the Michigan Constitution to provide for indeterminate sentences allows the reductions called for in the county jail overcrowding act.

Justice GRIFFIN, concurring, stated that while this case deals with the possible encroachment upon the authority of the executive, continued use of early release as a substitute for jail and prison construction could also affect the judicial function. In determining the appropriateness of a sentence, a trial court should be concerned with considerations other than the likelihood that the sentence, once imposed, will later be reduced arbitrarily through operation of a statute such as the county jail overcrowding act.

CONSTITUTIONAL LAW — COUNTY JAIL OVERCROWDING ACT — POWER OF COMMUTATION.

The county jail overcrowding act does not infringe upon the Governor's power of executive clemency (1982 PA 325, MCL 801.51 *et seq.;* MSA 28.1748(1) *et seq.*).

*David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *Jon F. DeWitt* and *Jonathan W. Anderson*) for defendant Kent County Sheriff.

*Richard E. Hillary,* Director, and *Michael P. Mathews* for intervening defendant Kent County Office of the Defender.

Amicus Curiae:

*John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecuting Attorney, for the Wayne County Prosecutor.

ON REHEARING

CAVANAGH, J.

### I. INTRODUCTION

When we originally considered this case, the Court was divided equally on the constitutionality of the county jail overcrowding act, 1982 PA 325, MCL 801.51 *et seq.;* MSA 28.1748(1) *et seq.*[1] Rehearing was granted to resolve the Court's division on this important public issue. We conclude that the act does not infringe upon the Governor's power of executive clemency, and we reverse the Court of Appeals determination of unconstitutionality.

The jail overcrowding act directs a county sheriff to declare a jail overcrowding state of emergency when the general prisoner population of a county jail exceeds one hundred percent of the rated design capacity of the jail.[2] Upon a declaration of emergency, the sheriff is directed to notify designated county executive and judicial officers of the

---

[1] Our original opinion is found at 425 Mich 718; 391 NW2d 341 (1986). In it, Justice LEVIN set forth the facts which gave rise to this litigation:

The Sheriff of Kent County declared an "overcrowded state of emergency" for the Kent County jail, pursuant to Act 325, on May 12, 1983.

The prosecuting attorney for Kent County commenced this action, seeking a declaratory judgment that Act 325 was unconstitutional and an injunction barring the release of prisoners before the expiration of their sentences. The prosecuting attorney also sought a preliminary injunction to prevent prisoner release while this action was pending. The Kent County Office of the Defender was permitted to intervene as a defendant.

The circuit court denied the motion for a preliminary injunction, subsequently ruled that the act was constitutional, and denied the prosecutor's request for declaratory relief. The Court of Appeals reversed, and declared the act unconstitutional on the ground that it usurps the Governor's power of commutation. 133 Mich App 611; 350 NW2d 298 (1984). [425 Mich 727, n 2.]

[2] MCL 801.52, 801.53; MSA 28.1748(2), 28.1748(3).

emergency[3] and is exhorted to reduce the prison
population by existing legal means such as pretrial
diversion, reduction in the bonds of prisoners, and
use of day parole.[4] If these steps do not reduce the
jail population sufficiently to eliminate jail over-
crowding, the sheriff is directed to supply the chief
circuit judge of the county with the name of each
prisoner, along with details of the prisoner's sen-
tence and the offense for which he was convicted.[5]
The chief judge is directed to classify the prisoners
into two categories, those whose release would
present a high risk to the public safety, and those
whose release would not present such a risk. The
sheriff is then directed to reduce the sentences of
the low-risk prisoners by an equal percentage, set
by the chief circuit judge, until the overcrowding
is alleviated.

Of course, a statute is presumed constitutional,
and a party attacking the constitutionality of an
act must overcome this presumption.[6] The Kent
County Prosecutor maintains that the jail over-
crowding act contravenes Const 1963, art 5, § 14,
which gives the Governor the power to grant
reprieves, commutations, and pardons after convic-
tion of an offense.

We can summarize our disagreement as follows:
The overcrowded conditions of many Michigan
jails are legitimate legislative concerns. In enact-
ing the jail overcrowding act, the Legislature has
taken an appropriate measure to address this
problem, while intruding upon the Governor's
powers as little as possible. The incidental benefit
that accrues to the prisoners released under the

---

[3] MCL 801.54; MSA 28.1748(4).

[4] MCL 801.55; MSA 28.1748(5).

[5] MCL 801.56; MSA 28.1748(6).

[6] *Irishman's Lot v Secretary of State,* 338 Mich 662, 667; 62 NW2d
668 (1954).

act does not amount to an unconstitutional invasion of the powers of the executive branch.

## II. THE PURPOSE OF THE ACT

In assessing the validity of a statute against a constitutional challenge, an appropriate starting point is the legislative purpose in enacting the statute. In equal protection challenges, for example, a showing of discriminatory intent has long been required in those cases which allege racial discrimination. *Rogers v Lodge,* 458 US 613, 617; 102 S Ct 3272; 73 L Ed 2d 1012 (1982), reh den 459 US 899 (1982). In *Mobile v Bolden,* 446 US 55; 100 S Ct 1490; 64 L Ed 2d 47 (1980), it was held that an electoral scheme for selecting city councilmen at-large was not unconstitutional per se even though the effect of the scheme was to deprive minority voters of the opportunity to elect any of their members to the council. If the purpose of the at-large scheme, however, was to diminish the voting potential of minorities, then the statute would have been unconstitutional.

It is also appropriate to examine the legislative purpose in considering other constitutional challenges. For example, in *Pension Benefit Guaranty Corp v Gray & Co,* 467 US 717; 104 S Ct 2709; 81 L Ed 2d 601 (1984), a due process challenge to the provisions of ERISA was made on the ground that they applied retroactively for a period of five months preceding enactment of the statute. In rejecting the challenge, the Court explained:

> The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former. But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational

legislative purpose. [467 US 730. Citations and interior quotation marks omitted.]

Turning to the present case, the purpose of the jail overcrowding act is clear. Its entire thrust is to reduce or eliminate the evils fostered by over-crowded jails.[7]

The title of the act provides:

> AN ACT to authorize county sheriffs to declare a county jail overcrowding state of emergency; to prescribe the powers and duties of certain judges, county sheriffs, and other county officials; and to provide remedies for a county jail overcrowding state of emergency. [Emphasis added.]

In evaluating the legislative goals behind the jail overcrowding act, it is helpful to keep in mind the Legislature's plenary power over matters dealing with public health and welfare:

---

[7] In his concurring opinion in *Rhodes v Chapman*, 452 US 337, 354-355, n 3; 101 S Ct 2392; 69 L Ed 2d 59 (1981), Justice Brennan quoted from *Ruiz v Estelle*, 503 F Supp 1265, 1391 (SD Tex, 1980), to highlight the horrendous environments which overcrowded confinement create:

> It behooves us to remember that "it is impossible for a written opinion to convey the pernicious conditions and the pain and degradation which ordinary inmates suffer within [unconstitutionally operated prisons]—the gruesome experiences of youthful first offenders forcibly raped; the cruel and justifiable fears of inmates, wondering when they will be called upon to defend the next violent assault; the sheer misery, the discomfort, the wholesale loss of privacy for prisoners housed with one, two, or three others in a forty-five foot cell or suffocatingly packed together in a crowded dormitory; the physical suffering and wretched psychological stress which must be endured by those sick or injured who cannot obtain medical care . . . .
>
> "For those who are incarcerated within [such prisons], these conditions and experiences form the content and essence of daily existence."

The above conditions could equally exist with prolonged jail over-crowding.

The public health and general welfare of the
people of the state are hereby declared to be
matters of primary public concern. The legislature
shall pass suitable laws for the protection and
promotion of the public health. [Const 1963, art 4,
§ 51.]

The overcrowding of jails and prisons and the
problems generated by such overcrowding are is-
sues with which the Legislature has traditionally
dealt pursuant to the above constitutional man-
date. Appellees do not contend that the purpose of
the present statute is beyond legislative power.
Rather, appellees argue that regardless of purpose,
it is the effect of the act which must be considered
and that the effect is to grant commutations of
sentences.

### III. THE EFFECT OF THE ACT

A lawful purpose alone will not save a statute
which clearly violates constitutional principles. If
the effect of the jail overcrowding act is to violate
a constitutional command, then no laudable legis-
lative purpose can save the enactment. However,
it is not necessarily fatal to this legislation that,
when considered in a vacuum, it appears to inter-
fere with the Governor's executive powers. In
*State, County & Municipal Workers v Dearborn,*
311 Mich 674, 677; 19 NW2d 140 (1945), we ex-
plained this point, quoting from Story, Constitu-
tional Law (4th ed), p 380:

"When we speak of a separation of the three
great departments of government, and maintain
that that separation is indispensable to public
liberty, we are to understand this maxim in a
limited sense. It is not meant to affirm that they
must be kept wholly and entirely separate and

distinct, and have no common link or dependence, the one upon the other, in the slightest degree. The true meaning is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution."

The United States Supreme Court, while interpreting the federal constitution, also offers persuasive authority. In *United States v Nixon,* 418 US 683, 707; 94 S Ct 3090; 41 L Ed 2d 1039 (1974), the Court emphasized:

In designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence.

Later, in *Nixon v Administrator of General Services,* 433 US 425, 443; 97 S Ct 2777; 53 L Ed 2d 867 (1977), the United States Supreme Court reasoned:

Like the District Court, we therefore find that appellant's argument rests upon an "archaic view of the separation of powers as requiring three airtight departments of government." Rather, in determining whether the Act disrupts the proper balance between the coördinate branches, *the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions.* Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress. [Citations omitted; emphasis added.]

The Michigan constitutional provision which appellees contend is violated states:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor. [Const 1963, art 5, § 14.]

We disagree with the appellees' assertion that the jail overcrowding act permits commutations in violation of this provision.[8]

In our original *Kent Co* opinion, Justice LEVIN demonstrated why a generalized reduction in sentence in response to a jail emergency did not invade the Governor's power of commutation. See parts IV and V of his opinion. 425 Mich 733-742. Several factors which support his analysis warrant emphasis.

Commutations are acts of individualized clemency, typically motivated by the prisoner's personal characteristics and behavior in jail or prison. In contrast, the sentence reductions under the act are prompted by generalized conditions of the jail

---

[8] It is significant to note that when the jail overcrowding act was passed, Governor Milliken signed it without any indication of qualms that it would invade his executive powers of clemency. House Bill 5328 (1982 PA 325) was presented to the Governor on November 24, 1982, and he signed it two weeks later, on December 8, 1982. See 1982 Journal of the House 2540, 2667-2668. Also, although the present litigation has been pending for some years, Governor Blanchard has not sought to intervene to protect his powers. It is true that a Governor does not have to join in a challenge to a statute that is said to invade his power. See, e.g., *Buback v Governor*, 380 Mich 209; 156 NW2d 549 (1968). Nonetheless, we can presume that each Governor recognized the need for legislation dealing with overcrowding in county jails and approved the method chosen by the Legislature to deal with this problem.

or jails within the county, not by the unique characteristics of the affected prisoners. Section 5 of the act, redundantly perhaps, exhorts the sheriff and county judicial and executive officers to utilize existing means, "within the scope of their individual and collective legal authority," to reduce the jail population. Only when those measures are insufficient to eliminate the overcrowding emergency do the substantive provisions of the jail overcrowding act come into play.

Appellees argue that the provision for determining high-risk and low-risk prisoners, § 6 of the act, makes each release turn on individualized prisoner consideration, which is equivalent to a commutation. This is not so. Once the jail emergency is declared, it is the extent of the emergency, and not the characteristics of the prisoners, which determines the number of prisoners who will have their sentences reduced.

Further, the goals of commutations and the jail overcrowding act differ. Commutations are directly aimed at benefiting the released prisoner, and no others. Acts of clemency exist solely for this purpose. Reduction in sentences due to jail overcrowding is directly aimed at alleviating that emergency situation. The released prisoners are not the only ones affected by sentence reductions. The persons still confined enjoy improved living conditions. Undoubtedly, the released prisoners benefit more than those in jail because, by falling into the low-risk category, their sentences are reduced. That benefit, however, is simply an incidental and inevitable result of the final measures taken to alleviate the jail emergency.

IV. AUTHORITY OF THE LEGISLATURE

As shown, the jail overcrowding act's purpose

and effect withstands scrutiny. In addition, there are other bases on which to rest the act's validity.

In *Oakland Co Prosecutor v Dep't of Corrections,* 411 Mich 183; 305 NW2d 515 (1981), the Prison Overcrowding Emergency Powers Act, MCL 800.71; MSA 28.1437(1), endured a constitutional attack similar to the present one. We upheld the constitutionality of that act because it was within the terms of the constitutional grant of power to the Legislature over indeterminate sentences:

> The legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences. [Const 1963, art 4, § 45.]

Appellees urge that *Oakland Co* can be distinguished from the present case because the jail overcrowding act affects determinate, rather than indeterminate, sentences, and the Legislature does not have a constitutional grant of authority over the former as it does over the latter. To require a finding of a constitutional grant of authority to alter determinate sentences, however, it is first necessary to establish that the act actually infringes on the Governor's commutation power. We have found no such violation.

Moreover, in deciding *Oakland Co,* this Court properly adopted the most narrow holding in deciding the constitutional issues before it.[9] We rested our finding of that act's constitutionality solely on the Legislature's power over indeterminate sentences, thus "the question of its infringement on the Governor's commutation power [was] obviated . . . ." 411 Mich 194. Justice LEVIN con-

[9] Compare *Lisee v Secretary of State,* 388 Mich 32, 40; 199 NW2d 188 (1972); *Lansing v Jury Rowe Realty Co,* 59 Mich App 316, 320; 229 NW2d 432 (1975), lv den 394 Mich 819 (1975).

tinued this narrow analytical approach by holding that jail sentences are indeterminate, at least since the enactment of the jail overcrowding act in 1983. See part III of his opinion. 425 Mich 731-733. Now that the validity of the act is once again before us, we choose to address a broader issue: whether the Legislature, in confronting the present situation affecting the common good, can incidentally reduce jail sentences, whether indeterminate or not.

We find that it can. First, the act ensures enforcement of the regulations governing maintenance of jails, which the Department of Corrections, Bureau of Correctional Facilities, implemented pursuant to legislative directive. MCL 791.262; MSA 28.2322.[10] A jail which is so overcrowded that it triggers the release of prisoners under the act would otherwise be contravening the regulations' minimum-space requirements.[11] Certainly, the Legislature can take measures to enforce these rules promulgated under its authority.

Second, the Legislature has an interest in helping the state and its employees avoid liability when possible. As will be further discussed, past experience has shown that conditions arising from jail and prison overcrowding can lead to suits against jail and prison officials brought by prisoners under 42 USC 1983 for violation of their civil rights.[12] Also, the county where the jail is located

---

[10] [T]he legislature has created the Department of Corrections for the purpose of concentrating with that department the primary (but not exclusive of course) responsibility for the well-being as well as the disciplinary rehabilitation of state-sentenced prisoners . . . . [*Green v Dep't of Corrections,* 386 Mich 459, 465; 192 NW2d 491 (1971).]

[11] See, e.g., 1979 AC, R 791.557, 791.563, 791.573, 791.574, 791.580.

[12] In *Alabama v Pugh,* 438 US 781; 98 S Ct 3057; 57 L Ed 2d 1114

could possibly face liability under the public building exception to governmental immunity. MCL 691.1406; MSA 3.996(106).[13] The act provides a method by which the county and its jail officials can alleviate overcrowding before incidents giving rise to potential liability occur.

Finally, the lawfulness of the jail overcrowding act clearly emerges when we consider the constitutional ban of cruel and unusual punishment.[14] While overcrowding of closely held human beings does not necessarily amount to cruel and unusual punishment, the attendant problems, such as understaffing and lack of sanitation, eating, and recreation facilities, frequently do. Such conditions have caused jails and prisons in this state and throughout the United States to be placed under court supervision to implement the ban against cruel and unusual punishment.[15]

(1978), inmates in Alabama sued the state, its Board of Corrections, and several prison officials, asserting cruel and unusual punishment due to inhumane conditions resulting, in large part, from prison overcrowding. The United States District Court granted relief by proscribing measures to eradicate cruel and unusual punishment in the system. 406 F Supp 318 (MD Ala, 1976). The United States Court of Appeals affirmed. 559 F2d 283 (CA 5, 1977). The United States Supreme Court, while holding that the suit against Alabama and the Board of Corrections was barred by the Eleventh Amendment, declined to disturb the lower courts' ruling against the prison officials. For other cases involving 1983 actions, see footnote 1 of Justice Brennan's concurrence in *Rhodes, supra,* 452 US 353. See also *Dickerson v Marquette Prison Warden,* 99 Mich App 630; 298 NW2d 841 (1980), which presents another example of an inmate's 1983 action against a prison official, but on procedural due process grounds.

[13] For cases holding that jails can be found liable under this exception, see, e.g., *Green v Dep't of Corrections,* n 10 *supra; Lockaby v Wayne Co,* 406 Mich 65; 276 NW2d 1 (1979); *Davis v Detroit,* 149 Mich App 249; 386 NW2d 169 (1986), lv den 426 Mich 856 (1986); *Young v City of Ann Arbor,* 119 Mich App 512; 326 NW2d 547 (1982), *(On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), lv den 425 Mich 862 (1986).

[14] Const 1963, art 1, § 16; US Const, Am VIII, as applied to the states through US Const, Am XIV. See *Louisiana ex rel Francis v Resweber,* 329 US 459; 67 S Ct 374; 91 L Ed 422 (1947); *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962).

[15] In his concurrence in *Rhodes v Chapman, supra,* Justice Brennan

No one now doubts the authority of courts to
order the release of prisoners confined under con-
ditions violating their Eighth and Fourteenth
Amendment rights. It is far too late in the day to
argue that such releases are a judicial intrusion on
the executive's power of clemency. Similarly, the
Legislature, through the jail overcrowding act, is
seeking to *prevent* violations of prisoners' Eighth
and Fourteenth Amendment rights. When we con-
sider that many of the prisoners in county jails
have yet to be convicted, the state must be espe-
cially solicitous of their rights while they are still
protected by the presumption of innocence. The
act provides bright-line guidance to the courts and
sheriff when the likelihood of Eighth and Four-
teenth Amendment violations becomes imminent.

Whether the jail overcrowding act may trigger
the release of prisoners before conditions become
so severe as to violate the cruel and unusual
punishment provisions, we need not decide. A
threatened injury is enough to justify action. Judg-
ment reversed.

RILEY, C.J., and LEVIN, ARCHER, and GRIFFIN,
JJ., concurred with CAVANAGH, J.

BOYLE, J. I concur in the result of the majority
because, upon consideration of the new arguments
presented since this Court's original determination

noted that "individual prisons or entire prison systems in at least 24
States have been declared unconstitutional under the Eighth and
Fourteenth Amendments . . . ." 452 US 353. Justice Brennan then
cited a lengthy list of cases where prisons or prison systems have
been placed under court order because of conditions of confinement
challenged under the Eighth and Fourteenth Amendments. See 452
US 353, n 1. In *Rhodes,* the United States Supreme Court reversed a
finding that double celling in a state prison constituted cruel and
unusual punishment. Justice Brennan, joined by Justices Blackmun
and Stevens, concurred, but emphasized that the Court's decision
"should in no way be construed as a retreat from careful judicial
scrutiny of prison conditions . . . ." 452 US 353.

in this case, I am now convinced that the grant of power to the Legislature permitting indeterminate sentences allows the reductions called for in the jail overcrowding act.

LEVIN and BRICKLEY, JJ., concurred with BOYLE, J.

GRIFFIN, J. I concur in the Court's holding that the Legislature is constitutionally empowered to enact the statute in question. To so hold is not to say, however, that it represents the best public policy.

This lawsuit deals with possible encroachment upon the executive's authority. But continued use of early release as a substitute for jail and prison construction could also affect the judicial function. In determining the appropriate sentence to be imposed upon one convicted of crime, a trial judge should be concerned with considerations other than the likelihood that the sentence, once imposed, will later be reduced arbitrarily through the operation of a statute such as this.

Of course, concerns about the wisdom of pursuing such a policy are appropriately addressed to the Legislature.