# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

VIRGIL SMITH,

Defendant-Appellee.

FOR PUBLICATION
August 22, 2017
9:15 a.m.

No. 332288
Wayne Circuit Court
LC No. 15-005228-01-FH

ON REMAND

Before: RIORDAN, P.J., and SERVITTO and M. J. KELLY, JJ.

SERVITTO, J.

This case is before us, as on reconsideration granted (*People v Smith*, ___ Mich ___; ___NW2d ___ (2017), to determine whether the trial court's order declaring a portion of defendant's plea agreement void was in error and whether the trial court's subsequent order denying the prosecution's motion to vacate defendant's plea constituted an abuse of discretion. This Court previously dismissed the appeal as moot. *People v Smith*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2017 (Docket No. 332288). We now affirm.

We stated the relevant facts in our prior decision:

In May 2015, defendant was involved in an altercation with his ex-wife. As a result, he was charged with domestic violence, MCL 750.81(2); malicious destruction of personal property, MCL 750.377a(1)(a)(i); felonious assault, MCL 750.82; and felony firearm, MCL 750.227b. On February 11, 2016, the prosecution and defendant entered into a plea agreement whereby defendant would plead guilty to the charge of malicious destruction of property and agreed both to resign his Senate seat and to refrain from holding public office during his five-year probationary period (which included a ten-month jail term). The remaining charges against the defendant would be dismissed. At the sentencing hearing, the trial court ruled sua sponte that the provisions of the agreement related to defendant's Senate seat violated the constitutional principle of separation of powers and infringed on the people's right to choose their representatives. Accordingly, the trial court declared those portions of the plea agreement void because they "offend[ ] the Constitution of the State of Michigan,

-1-

[are] contrary to public policy and compromise[ ] the integrity of th[e] court." In all other respects, the court sentenced defendant in accordance with the plea agreement.

The prosecution subsequently moved to vacate defendant's plea. The prosecution argued that in failing to resign, defendant had not complied with the plea agreement and that the prosecution should be permitted to negotiate a new plea deal given the trial court's refusal to enforce the entirety of the original agreement. The trial court denied the prosecution's motion. The trial court acknowledged that while plea agreements are akin to contracts, they must serve the interests of justice. The trial court then held that where the parties had initially indicated that the agreement protected the public and provided for punishment and rehabilitation, enforcement of the agreement without the "offending portion" would serve the interests of justice. [*Smith*, at slip op 1].

The trial court added that vacating the plea would harm the interests of justice because:

[v]acating the plea would violate the fundamental principle that it is the right of the people to elect whom they choose to elect for office by allowing the prosecutor to pressure a member of the legislative branch to resign or face prosecution and likely imprisonment. Vacating the plea would violate the separation of powers set forth in the Michigan Constitution, where only the Senate can discipline or remove one of its members convicted of this type of crime, by allowing the prosecutor to pressure a member of the legislative branch to resign or face prosecution and likely imprisonment. Vacating the plea would violate public policy by allowing the prosecutor to dominate the legislative branch of government with the threat of forced resignation.

And granting the prosecution[']s motion to vacate this plea would compromise the court's integrity by involving it in an act that violates public policy and offends the constitution.

On remand, we consider the prosecution's appeal of both the trial court's original order voiding a portion of defendant's plea agreement and its order denying the prosecution's motion to vacate defendant's plea.

A trial court's decision to set aside a guilty plea is reviewed for an abuse of discretion. *People v Strong*, 213 Mich App 107, 112; 539 NW2d 736 (1995). An abuse of discretion "occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016) (internal quotation marks omitted). Issues of constitutional law are reviewed de novo. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

On appeal, the prosecution argues that the trial court erred in voiding the portion of the plea agreement requiring defendant to resign his state Senate seat and refrain from seeking elective or appointed public office during the five-year probationary period. The prosecution further argues that the trial court abused its discretion in refusing to allow the prosecution to

withdraw the plea agreement and proceed to trial. The prosecution specifically contends that the plea agreement did not, as the trial court found, violate the separation of powers and that both defendant *and* the prosecution were entitled to receive the benefit of their end of the negotiated plea agreement. [1]

The Michigan Constitution provides for the separation of powers, specifically stating, "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. "While the Constitution provides for three separate branches of government, Const 1963, art 3, § 2, the boundaries between these branches need not be 'airtight[.]' " *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014) (internal citation omitted). Indeed, the Michigan Supreme Court has held that this constitutional provision does not require "that [the separate branches of government] must be kept wholly and entirely separate and distinct, and have no common link or dependence, the one upon the other, in the slightest degree." *Kent Co Prosecutor v Kent Co Sheriff (On Rehearing)*, 428 Mich 314, 321-322; 409 NW2d 202 (1987), quoting *Local 321, State, Co, & Muni Workers of America v Dearborn*, 311 Mich 674, 677; 19 NW2d 140 (1945). Instead, "[t]he true meaning [of the separation of powers clause] is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution." *Id*. at 322.

Relevant to the instant matter, the state Constitution contains a clause regarding the qualifications of an individual to serve as part of the state Legislature, including the state Senate:

> Each senator and representative must be a citizen of the United States, at least 21 years of age, and an elector of the district he represents. The removal of his domicile from the district shall be deemed a vacation of the office. No person who has been convicted of subversion or who has within the preceding 20 years been convicted of a felony involving a breach of public trust shall be eligible for either house of the legislature. [Const 1963, art 4, § 7.]

---

[1] We note that despite the trial court's rulings, defendant in fact voluntarily resigned from his seat in the Michigan Senate effective April 12, 2016. Although defendant previously argued that the trial court's vacating the portion of the plea agreement requiring him to not seek elected office during his five-year probationary period was not yet ripe for review, it has come to our attention that defendant is currently running for a public office. Moreover, even if he were not, an "actual, existing controversy" exists because the trial court's act of striking certain terms from the plea agreement as unconstitutional, while then approving the rest of the agreement, formed a "real and immediate threat" to the prosecution's interest. See, *People v Conat*, 238 Mich App 134, 145; 605 NW2d 49 (1999).

The Michigan Constitution added additional disqualifying characteristics that would bar someone from seeking public office at Const 1963, art 11, § 8:

> A person is ineligible for election or appointment to any state or local elective office of this state and ineligible to hold a position in public employment in this state that is policy-making or that has discretionary authority over public assets if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government. This requirement is in addition to any other qualification required under this constitution or by law.

Additionally, the Michigan Constitution states how a member of the state Senate can be forcibly removed from that position, providing, in relevant part as follows:

> Each house shall be the sole judge of the qualifications, elections and returns of its members, and may, with the concurrence of two-thirds of all the members elected thereto and serving therein, expel a member. The reasons for such expulsion shall be entered in the journal, with the votes and names of the members voting upon the question. No member shall be expelled a second time for the same cause. [Const 1963, art 4, § 16.]

Meanwhile, the Michigan Constitution also expressly bars the executive branch of government, of which the prosecution is a member, *People v Conat*, 238 Mich App 134, 150; 605 NW2d 49 (1999), from expelling members from the other two branches of government, including the legislative branch: "[The governor] may remove or suspend from office for gross neglect of duty or for corrupt conduct in office, or for any other misfeasance or malfeasance therein, any elective or appointive state officer, except legislative or judicial, and shall report the reasons for such removal or suspension to the legislature." Const 1963, art 5, § 10.

Considering the language used in the state Constitution, it is clear that the Constitution specifically described when an individual is no longer eligible to run for elective office, including as a state Senator, and also reserved the right to the Legislature to determine when its own members should be expelled. While the prosecution argues that the voluntary nature of defendant's decision to agree to the plea agreement rendered it constitutional, such a view would serve to allow the prosecution, as a member of the executive branch, to do, indirectly, an act which it is specifically prohibited from doing directly.

There are no Michigan cases that have addressed this issue. However, at least one federal court has considered a nearly identical issue. In *United States v Richmond*, 550 F Supp 605 (EDNY 1982), the defendant, a member of Congress, entered into a plea agreement which contained as part of its provisions the requirements that he immediately resign from Congress and withdraw as a candidate for re-election. *Id*. at 606. The United States District Court found that the plea agreement provisions relating to his current membership in Congress and his candidacy for re-election were void because they represented an unconstitutional interference by

the executive with the legislative branch of government (separation of powers), interfered with the rights of the defendant's constituents, and contravened public policy. *Id*.

The imperative that the people are sovereign in a republican form of government "was embodied in the Constitution by prescribing only a limited number of qualifications for congressional office," and by empowering "the houses of Congress to discipline their members and in extreme cases to expel them by a two-thirds vote." *Id*. at 607. "It was the people of the Congressman's district who were to decide upon his moral and other qualifications, not Congress. A fortiori this inhibition applies to other branches of government." *Id*. As the *Richmond* Court explained, "[j]ust as Congress and the states are prohibited from interfering with the choice of the people for congressional office, federal prosecutors may not, directly or indirectly, subvert the people's choice or deny them the opportunity to vote for any candidate." *Id*. at 608.

Similarly, though admittedly not directly on point, the state of Maryland also held that requiring an elected official to refrain from running for public office as a condition of his criminal sentence violated the separation of powers. In *Leopold v State*, 216 Md App 586; 88 A3d 860 (2014), the defendant, who held the elected position of County Executive was convicted by jury of several criminal charges. *Id*. at 590. As part of his sentence, specifically as a special condition of probation, the trial court prohibited the defendant from "be[ing] a candidate for any local, state, or federal elected office." *Id*. On appeal, the Court of Special Appeals of Maryland struck the special condition of probation because "there exists a comprehensive statutory scheme governing the eligibility and removal of public officials in Maryland" and "the separation of powers precludes trial courts from interfering in areas where the Legislature left the question of eligibility on who may seek elected office to the County Council and the General Assembly." *Id*. at 613, 611.

While the prosecution points out that forcing one out of office is quite different from the voluntary resignation that was to occur in this case, the *Richmond* Court found it of no matter that the defendant had voluntarily consented to the plea agreement, stating that "[t]he constitutional protections of legislators and candidates exist not for their personal benefit but to safeguard the rights of the people. A member of Congress may not barter away constitutional protections which belong not to him but to his constituents." *Id*. 550 F Supp at 609 (internal citations omitted).

Further, public policy considerations are significant when plea negotiations are permitted to include elected offices. "Even arms[-]length negotiated commercial contracts between persons of equal power are void if they offend public policy." *Richmond*, 550 F Supp at 609. The *Richmond* Court further explained:

> The possibility of the executive utilizing the threat of prosecution to force the resignation of a congressional representative involves potentially dangerous political consequences. It represents an opportunity for an assault on the composition and integrity of a coordinate branch of government. Taken together, investigative techniques such as those used in the Abscam cases, *see United States v Myers*, 688 F 2d 817 (2d Cir 1982), the enormous spectrum of criminal laws that can be violated, the powerful investigative and prosecutorial machine

available to the executive, and forced resignations through plea bargaining would provide an intolerable threat to a free and independent Congress. [*Richmond*, 550 F Supp at 608].

We find the reasoning in *Richmond* persuasive, despite the dissent's position that the case was "wrongly" decided by the federal bench charged with making that decision. It is particularly compelling in light of the substantial similarities between that case and the instant matter. In both the instant case and *Richmond*, the constitution in question provided a singular manner in which a sitting member can be removed from office. In both cases, the remedy was for two-thirds of the members of the body in which the person was elected to vote for the member's expulsion. *Richmond*, 550 F Supp at 607. Indeed, the Michigan Constitution contains an additional clause not considered by the *Richmond* court, which specifically bars the executive branch from removing members of the legislative branch. Const 1963, art 5, § 10.

Likewise, the *Richmond* case and the present case both consider constitutional provisions that set out an exhaustive list of requirements and disqualifiers for a person seeking a position in the legislature. In *Richmond*, there were age, residency, and citizenship requirements, as well as criminal and similar disqualifiers. Similarly, in the present case, the Michigan Constitution contains a list of requirements for a person seeking a state Senate seat, including that the person "be a citizen of the United States, at least 21 years of age, and an elector of the district he represents." Const 1963, art 4, § 7. Additionally, the Michigan Constitution contains an exhaustive list of crimes that disqualify someone from seeking a state Senate seat. Const 1963, art 11, § 8; Const 1963, art 4, § 7. And, both in *Richmond* and in this case, both defendants voluntarily entered into plea agreements with provisions concerning their elected seats.

In requiring defendant to resign from his state Senate seat as part of the plea bargain, the prosecution attempted to invade the role of punishing and expelling a member of the state Senate which is reserved solely for the Legislature. Const 1963, art 4, § 16. Because that duty was provided to the Legislature alone, the prosecution's *offering* of that plea agreement term was an unconstitutional attempt to violate the separation of powers. Const 1963, art 3, § 2. When the prosecution included in the plea bargain the requirement that defendant not seek public office for his five-year probationary period, the prosecution invaded the role of defendant's constituents to "decide upon his moral and other qualifications" when such were not specifically disqualifying under Const 1963, art 11, § 8, and Const 1963, art 4, § 7. *Richmond*, 550 F Supp at 607. The attempt to do so by the prosecution violated the Michigan Constitution, which specifically sets out what crimes can disqualify an individual from seeking public office. Notably, that list does not include the crime of which defendant was convicted. Const 1963, art 11, § 8; Const 1963, art 4, § 7. Likewise, if the judiciary were to enter such orders, even upon the agreement of the parties, it would be providing tacit approval to the terms of the agreement, and as such would violate the Michigan Constitution. See *Richmond*, 550 F Supp at 609.

As the *Richmond* court held, allowing the prosecution to engage in such negotiations permits the possibility of threatened prosecution to be used for nefarious purposes. Even tacit permission for prosecutors to engage in such negotiation, even if done innocently at the time, could open the door to the executive branch using its power of prosecution to (under threat of prosecution and likely imprisonment) remove those from elected office that do not align with the

executive's political preferences. Indeed, in the present case, the dangers of this practice were specifically observed in defendant's response to the prosecution's motion to vacate the plea.

In response to the prosecution's motion, defendant argued that while he believed the trial court should not vacate the plea, if it intended to do so, he wanted the opportunity to fulfill the terms of the plea agreement to avoid potential prosecution and imprisonment. As can be seen, the mere possibility of prosecution and prison time resulted in defendant seeking to abandon his state Senate seat to avoid those possibilities. That is just the issue upon which the trial court, defendant, and the *Richmond* court expressed concern. "Availability of the technique and the possibilities of its abuse cannot be tolerated." *Id*. at 609. Further, "[t]he prosecutorial practice of dealing in legislative office in negotiations with congressional defendants must be arrested before its potential for abuse is realized." *Id*. In affirming the trial court's decision to strike those terms from the plea agreement, this Court will ensure that future prosecutors are aware of the illegal nature of such negotiations, and the possibility of abuse by prosecutors will be diminished.[2]

There is no question that public officials can, and do, voluntarily resign from office for a variety of reasons. For the dissent to suggest that our decision and reasoning necessarily indicate that public officials can never voluntarily resign is nonsensical. The voluntary resignation from public office by one holding such office, by that individual's own volition without any unrelated criminal charges being associated with the resignation, is a drastically different situation than the one before us today. When another branch of government, like the executive branch, uses resignation from public office as a bargaining tool, the public office held sheds it cloak of public service and becomes one of service personal to the officeholder and the prosecution. It diminishes the nature and purpose of the public office and reduces it to a simple tool used solely to better or worsen an officeholders' criminal position. In addition, as the dissent points out, "an elected officeholder should be treated no differently than any other citizen" as it relates to criminal plea negotiations. If the resignation from public office is used as a potential plea negotiation tool, that equality is gone and the executive branch is effectively recognizing a second class of citizens – an elected class with an additional, uncommon benefit with which to bargain.

Moreover, in the present case, the fact that defendant was willing to voluntarily relinquish his state Senate seat and refrain from seeking public office during probation is entirely irrelevant to the issue presented here. Defendant did not have the constitutional right to use his

---

[2] The dissent lightly dismisses the potential of prosecutors misusing the office (i.e., referring to "public policy doomsday hyperbole" and "imaginary specter of prosecutors running amok"). However, we would be remiss if we did not point out that this Court was made aware that in direct response to this case, the Wayne County Prosecutor's office, at least temporarily, instituted a policy of "no plea offers" to *all* defendants appearing before the trial court judge assigned to the instant matter. This conduct not only raises constitutional implications, it firmly establishes that the executive branch does, in fact, have the ability and potential to use its power in ways that are contrary to public policy.

elected office as a bargaining chip, because the constitutional rights associated with his office were not for his individual benefit but for the benefit of the people who elected him. Allowing the prosecution to engage in this type of negotiation (using prosecution and possible imprisonment in exchange for a resignation or promise not to seek elected office) and then calling the agreement "voluntary" falls well within the problem of coercion regarding which the *Richmond* court expressed concern. We have the same concern. Therefore, the prosecution's argument in that vein is without merit.

As such, the trial court properly determined that the terms of the plea agreement requiring defendant to resign from his state Senate seat and not seek public officer for five years were unconstitutional. The trial court properly struck those portions of the plea agreement before entering the judgment of sentence. That being the case, we must next determine whether the trial court abused its discretion when it denied the prosecution's motion to vacate the plea agreement.

Pursuant to MCR 6.310(E), "[o]n the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement." This Court has held that "the prosecutor has an equal right to withdraw from a plea agreement" because "the people, no less than the defendant, should be able to receive the benefit of the agreed-upon bargain[.]" *People v Siebert*, 201 Mich App 402, 413; 507 NW2d 211 (1993). " 'The authority of a prosecutor to make bargains with defendants has long been recognized as an essential component of the efficient administration of justice.' " *People v Martinez*, 307 Mich App 641, 651; 861 NW2d 905 (2014), quoting *People v Jackson*, 192 Mich App 10, 14-15; 480 NW2d 283 (1991). "In light of the prosecutor's expansive powers and the public interest in maintaining the integrity of the judicial system, agreements between defendants and prosecutors affecting the disposition of criminal charges must be reviewed within the context of their function to serve the administration of criminal justice." *Jackson*, 192 Mich App at 15. "[W]hile analogous to a contract, plea bargains are not governed by the standards of commerce but must comport with the interests of justice in the administration of criminal laws." *Martinez*, 307 Mich App at 651. "In other words, contractual theories will not be applied if to do so would subvert the ends of justice." *People v Swirles (After Remand)*, 218 Mich App 133, 135; 553 NW2d 357 (1996).

Pursuant to the above law, the question this Court must consider, then, is whether the trial court abused its discretion when it determined that permitting the prosecution to withdraw the plea would "subvert the ends of justice." *Swirles (After Remand)*, 218 Mich App at 135. We find that voiding the portions of the plea agreement that were unconstitutional while accepting the rest "serve[d] the administration of criminal justice." *Jackson*, 192 Mich App at 15.

As previously discussed, the action of the prosecution in offering to forego prosecution on crimes that could ultimately result in imprisonment (of at least two years because of the felony-firearm charge) in exchange for defendant, among other things, resigning his state Senate seat and refraining from holding public office, was a dangerous proposition. Not only was the offer unconstitutional, but it also carried with it the possibility of abuse by future prosecutors. It is not hard to extend the prosecution's actions in this case to reach a situation where a prosecutor in the future might go on a fishing expedition against a political opponent, threaten to charge them with serious felonies, and then provide a "voluntary" outlet from that possibility by giving up their position in the legislature and agreeing to not run in the future. Allowing the prosecution in the present case to make that offer, reach an agreement, and then simply have

another chance at negotiations when the trial court strikes the unconstitutional parts of the agreement sends the wrong message. If a prosecutor is aware in the future that using the threat of criminal charges against a member of the legislative branch will only be punished by allowing them to go back to the negotiating table after the courts discover their wrongdoing, there will be little impetus to stop the practice. Losing the benefit of their bargain after making such an agreement, however, would send the message that these actions, which contain the possibility of unconstitutional coercion, are better to be avoided entirely. Given that analysis, it is logical that the trial court's order refusing to allow the prosecution to vacate the plea was done so in order to "serve the administration of criminal justice." *Jackson*, 192 Mich App at 15. Deciding otherwise would have sent a permissive instruction to the prosecution that making such an agreement only carries the risk of having to start negotiations over.

Additionally, in the present case (and it is not hard to see similar circumstances in future cases) defendant has been placed in a much worse bargaining position since the plea was accepted by the trial court. The prosecution now knows that defendant is willing to make a plea, defendant revealed the location of the weapon used during the crime as a condition of the plea, and defendant has since voluntarily resigned his state Senate seat. Permitting the prosecution to go back to the negotiating table with such advantages after it made an unconstitutional plea agreement would undoubtedly "subvert the ends of justice." *Swirles (After Remand)*, 218 Mich App at 135. Also of importance, defendant is not left entirely unpunished as a result of the trial court's decision. Defendant was still required to serve (and has now served) 10 months in the Wayne County Jail without the possibility of early release and five years of probation, as well as submit to alcohol and drug treatment with monthly documentation, submit to a mental health evaluation and full compliance with treatment, and pay full restitution to be determined.

This Court finds that the trial court did not abuse its discretion in denying the prosecution's motion to vacate the plea.

Affirmed.


/s/ Deborah A. Servitto
/s/ Michael J. Kelly